**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| EARL M. WHEBY, JR., Individually and On Behalf of All Others Similarly Situated, | ) | |
| Plaintiff, | ) | Case No. _______________ |
| v. | ) | JURY TRIAL DEMANDED |
| BIOSCRIP, INC., R. CARTER PATE, DAN GREENLEAF, MICHAEL G. BRONFEIN, DAVID W. GOLDING, MICHAEL GOLDSTEIN, STEVEN NEUMANN, and CHRISTOPHER S. SHACKELTON, | ) | CLASS ACTION |
| Defendants. | ) | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. On March 14, 2019, the Board of Directors (the "Board" or "Individual Defendants") of BioScrip, Inc. ("BioScrip" or the "Company") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with HC Group Holdings II, Inc. ("Option Care") and HC Group Holdings I, LLC ("Omega Parent"), pursuant to which BioScrip and Option Care agreed to combine their respective businesses (the "Proposed Transaction"). Option Care is owned by investment funds affiliated with Madison Dearborn Partners, LLC ("Madison Dearborn") and Walgreens Boots Alliance, Inc. ("Walgreens").

2. Upon consummation of the Proposed Transaction, all shares of Option Care's common stock will be cancelled and converted into the right of Omega Parent to receive

542,261,567 shares of BioScrip's common stock. Following the close of the Proposed Transaction, Omega Parent will own approximately 79.5% of the issued and outstanding shares of the combined company. Additionally, 28,193,428.41 shares of BioScrip common stock will be issued to Omega Parent in respect of certain outstanding unvested contingent restricted stock units of BioScrip.

3. On June 6, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC"), which seeks stockholder approval of the issuance of shares of BioScrip common stock to Omega Parent pursuant to the Merger Agreement, as well as approval of a third amended and restated certificate of incorporation of BioScrip and an amendment to the certificate of designations of Series A preferred stock of BioScrip.

4. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of BioScrip common stock.

9. Defendant BioScrip is a Delaware corporation and maintains its principal executive offices at 1600 Broadway, Suite 700, Denver, Colorado 80202. BioScrip's common stock is traded on the NasdaqGS under the ticker symbol "BIOS."

10. Defendant R. Carter Pate ("Pate") is Chairman of the Board of the Company. As discussed below, Pate is Chief Executive Officer of a company in which Coliseum Capital Management, LLC ("Coliseum") has a significant ownership interest. Following the close of the Proposed Transaction, Pate will serve as a director of the combined company.

11. Defendant Dan Greenleaf ("Greenleaf") is President, Chief Executive Officer, and a director of the Company. Following the close of the Proposed Transaction, Greenleaf will serve as a special advisor to the combined company's board of directors.

12. Defendant Michael G. Bronfein is a director of the Company.

13. Defendant David W. Golding ("Golding") is a director of the Company. Following the close of the Proposed Transaction, Golding will serve as a director of the combined company.

14. Defendant Michael Goldstein ("Goldstein") is a director of the Company. Goldstein is an advisor to one of the Company's financial advisors in connection with the Proposed Transaction, Jefferies LLC ("Jefferies").

15. Defendant Steven Neumann ("Neumann") is a director of the Company.

16. Defendant Christopher S. Shackelton ("Shackelton") is a director of the Company.

Shackelton is a co-founder and managing partner of Coliseum.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

**CLASS ACTION ALLEGATIONS**

18. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of BioScrip (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

19. This action is properly maintainable as a class action.

20. The Class is so numerous that joinder of all members is impracticable. As of June 11, 2019, there were approximately 128,758,438 shares of BioScrip common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

21. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

22. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

23. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would

substantially impair or impede those non-party Class members' ability to protect their interests.

24. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

***Background of the Company and the Proposed Transaction***

25. BioScrip is a national provider of infusion and home care management solutions.

26. The Company partners with physicians, hospital systems, payors, pharmaceutical manufacturers, and skilled nursing facilities to provide patients access to post-acute care services.

27. On March 14, 2019, the Board caused the Company to enter into the Merger Agreement, pursuant to which BioScrip and Option Care, which is owned by affiliates of Madison Dearborn and Walgreens, agreed to combine their respective businesses.

28. Upon consummation of the Proposed Transaction, all shares of Option Care's common stock will be cancelled and converted into the right of Omega Parent to receive 542,261,567 shares of BioScrip's common stock.

29. Following the close of the Proposed Transaction, Omega Parent will own approximately 79.5% of the issued and outstanding shares of the combined company, and current BioScrip shareholders will only hold the remainder.

30. Additionally, 28,193,428.41 shares of BioScrip common stock will be issued to Omega Parent in respect of certain outstanding unvested contingent restricted stock units of BioScrip.

31. According to the press release announcing the Proposed Transaction:

> BioScrip, Inc. (NASDAQ: BIOS) ("BioScrip") and Option Care Enterprises, Inc. ("Option Care"), the nation's largest independent providers of home and alternate

treatment site infusion therapy services, today announced that they have entered into a definitive merger agreement. The combination is expected to create a leading independent provider with the national reach, comprehensive therapy offering and financial capacity to succeed in the attractive and growing home and alternate site infusion services segment of the $100 billion U.S. infusion market.

Under the terms of the merger agreement, BioScrip will issue new shares to Option Care's shareholder, which is owned by investment funds affiliated with Madison Dearborn Partners, LLC ("MDP") and Walgreens Boots Alliance, Inc. (NASDAQ: WBA) ("WBA"), in an all-stock transaction. Upon completion of the transaction, MDP funds and WBA will beneficially own approximately 80% of the combined publicly traded company on a fully diluted basis, with current BioScrip shareholders holding the remainder. The combined company's common stock will continue to be listed on the Nasdaq Global Market. The transaction has been unanimously approved by the boards of directors of both BioScrip and Option Care.

The combined company will be led by Option Care Chief Executive Officer John Rademacher and Option Care Chief Financial Officer Mike Shapiro and will incorporate the best talent, processes and systems from both Option Care and BioScrip. It also will have a leading, independent clinical platform for delivering high-quality infusion therapy to more patients across the United States and providing superior outcomes for patients, payors and providers. BioScrip President and Chief Executive Officer Daniel E. Greenleaf will remain active in the combined company as a special advisor to its Board of Directors. . . .

In addition to Rademacher and Shapiro, the combined company's leadership will draw from the experienced teams of both Option Care and BioScrip.

The transaction, which is expected to be completed in the second half of 2019, is subject to the satisfaction of customary closing conditions, including regulatory approvals and approval by BioScrip shareholders. . . .

Advisors

In connection with the transaction, Jefferies LLC and Moelis & Company LLC are acting as joint financial advisors to BioScrip, and Gibson, Dunn & Crutcher LLP is serving as legal advisor. Goldman Sachs & Co. LLC and BofA Merrill Lynch are acting as financial advisors and Kirkland & Ellis LLP is acting as legal advisor to Option Care.

32. On March 14, 2019, BioScrip also entered into a Preferred Stock Repurchase Agreement with funds and accounts managed by Coliseum, pursuant to which BioScrip will repurchase 100% of its outstanding Series C convertible preferred stock from the current holders.

33. In connection with the Preferred Stock Repurchase Agreement, BioScrip has agreed to issue 2.5226 shares of BioScrip common stock per share of Series C preferred stock to the holders of Series C preferred stock, totaling approximately 1,549,323 shares of BioScrip common stock in the aggregate.

34. Funds and accounts managed by Coliseum beneficially own 100% of the Series C preferred stock and 50.04% of the Series A preferred stock.

35. Individual Defendant Shackelton is a co-founder and managing partner of Coliseum.

36. Additionally, Individual Defendant Pate is Chief Executive Officer of a company in which Coliseum has a significant ownership interest and for which Shackelton serves as chairman of the board.

***The Proxy Statement Omits Material Information***

37. Defendants filed the Proxy Statement with the SEC, which seeks stockholder approval of the issuance of shares of BioScrip common stock to Omega Parent pursuant to the Merger Agreement, as well as approval of a third amended and restated certificate of incorporation of BioScrip and an amendment to the certificate of designations of Series A preferred stock of BioScrip.

38. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

39. First, the Proxy Statement omits material information regarding BioScrip's and Option Care's financial projections.

40. With respect to BioScrip's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate Adjusted EBITDA; (ii) all line items used to calculate

Pro Forma Adjusted EBITDA; (iii) all line items used to calculate unlevered free cash flow; and (iv) a reconciliation of all non-GAAP to GAAP metrics.

41. With respect to Option Care's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate Adjusted EBITDA; (ii) all line items used to calculate Pro Forma Adjusted EBITDA; (iii) all line items used to calculate unlevered free cash flow; and (iv) a reconciliation of all non-GAAP to GAAP metrics.

42. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

43. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Moelis & Company LLC ("Moelis").

44. With respect to Moelis's Discounted Cash Flow Analysis of BioScrip, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flows; (ii) the individual inputs and assumptions underlying the ranges of discount rates and growth rates used by Moelis in the analysis; (iii) the estimated terminal values of the Company; (iv) Moelis's basis for applying a range of multiples of 10.0x to 13.0x to terminal year Adjusted EBITDA; and (v) the projected net operating losses used by Moelis in the analysis.

45. With respect to Moelis's Discounted Cash Flow Analysis of Option Care, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flows; (ii) the individual inputs and assumptions underlying the range of discount rates used by Moelis in the analysis; (iii) the estimated terminal values of Option Care; (iv) Moelis's basis for applying a range

of multiples of 10.0x to 13.0x to terminal year Adjusted EBITDA; and (v) the projected net operating losses used by Moelis in the analysis.

46. With respect to Moelis's DCF-Based Has/Gets Analyses, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flows; (ii) the individual inputs and assumptions underlying the ranges of discount rates used by Moelis in the analyses; (iii) estimated terminal values; (iv) Moelis's basis for applying a range of multiples of 10.0x to 13.0x to terminal year Adjusted EBITDA; and (v) the projected net operating losses used by Moelis in the analyses.

47. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

48. Third, the Proxy Statement omits material information regarding potential conflicts of interest of Moelis.

49. The Proxy Statement fails to disclose the circumstances under which the "discretionary fee" is payable to Moelis in connection with the Proposed Transaction, as well as the amount of such fee and whether the Individual Defendants have determined to pay such fee.

50. The Proxy Statement fails to disclose the nature of Moelis's "relationships with BioScrip, Option Care and Madison Dearborn Partners" as discussed with the Board on October 21, 2018, as well as with "the Ares Vehicles, Coliseum Capital and Walgreens Boots Alliance, Inc. (an affiliate of Option Care)" as discussed on March 13, 2019.

51. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

52. Fourth, the Proxy Statement omits material information regarding the engagement of the Company's additional financial advisor in connection with the Proposed Transaction, Jefferies, for which Individual Defendant Goldstein is an advisor, and which BioScrip's legal counsel observed had a "potential conflict of interest" due to "Jefferies potentially providing financing in the potential transaction."[1]

53. The Proxy Statement fails to disclose the amount of compensation Jefferies will receive in connection with its engagement, as well as the amount of Jefferies' compensation that is contingent upon consummation of the Proposed Transaction.

54. The Proxy Statement fails to disclose the timing and nature of the past services Jefferies provided to BioScrip (in addition to serving as BioScrip's financial advisor in connection with the Company's acquisition of Home Solutions in 2016), and the amount of compensation Jefferies received for providing such services.

55. The Proxy Statement fails to disclose whether Jefferies has performed past services for any other parties to the Merger Agreement or their affiliates, as well as the timing and nature of such services and the amount of compensation received by Jefferies for such services.

56. The Proxy Statement fails to disclose whether Jefferies will play any role in the financing of the Proposed Transaction.

57. Fifth, the Proxy Statement fails to disclose the timing and nature of all communications regarding the future employment and directorship of the Company's officers and directors, including who participated in all such communications, including all such communications regarding Individual Defendants Pate's and Golding's post-transaction director

[1] As early as July 2018, Jefferies "indicated their willingness to potentially provide financing for a transaction with Option Care."

positions and Individual Defendant Greenleaf's post-transaction advisory position.

58. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for unitholders to understand potential conflicts of interest of management and the Board.

59. Sixth, the Proxy Statement fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing the counterparties from submitting offers to the Company.

60. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with an offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

61. Seventh, the Proxy Statement fails to disclose how the members of the "BioScrip Transaction Committee" – Individual Defendants Pate, Goldstein, and Neumann – were selected and on what basis.

62. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

63. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and BioScrip

64. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary

to make the statements therein not materially false or misleading. BioScrip is liable as the issuer of these statements.

66. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

67. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

68. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

69. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

70. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

71. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants**

72. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

73. The Individual Defendants acted as controlling persons of BioScrip within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers

and/or directors of BioScrip and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

74. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

75. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

76. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

77. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: June 14, 2019

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com